UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VOICESTREAM PCS I, LLC, d/b/a T-MOBILE;<br>VOICESTREAM GSM I OPERATING COMPANY,<br>LLC, d/b/a T-MOBILE; OMNIPOINT HOLDINGS,<br>INC., d/b/a T-MOBILE; POWERTEL/KENTUCKY,<br>INC., d/b/a T-MOBILE; | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| FIRST CELLULAR OF SOUTHERN ILLINOIS and<br>NEXTEL WEST CORP., | )<br>)<br>) | |
| Plaintiff-Intervenors, | )<br>) | No. 04 C 5903 |
| v. | )<br>) | Judge John W. Darrah |
| EDWARD C. HURLEY, ERIN M. O'CONNEL-DIAZ,<br>LULA M. FORD, and KEVIN K. WRIGHT, in their<br>official capacities as Commissioners of the<br>Illinois Commerce Commission, | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| ADAMS TELEPHONE CO-OPERATIVE;<br>C-R TELEPHONE CO.; EL PASO TELEPHONE<br>CO.; GRAFTON TELEPHONE CO.;<br>LAHARPE TELEPHONE CO.;<br>HAMILTON COUNTY TELEPHONE CO-OP;<br>MARSEILLES TELEPHONE CO.;<br>McDONOUGH TELEPHONE CO-OPERATIVE,<br>INC.; McNABB TELEPHONE CO.; METAMORA<br>TELEPHONE CO.; MID-CENTURY TELEPHONE<br>CO-OP., INC.; ODIN TELEPHONE EXCHANGE,<br>INC.; and YATES TELEPHONE CO., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Initial Plaintiffs (collectively, "T-Mobile") filed suit seeking declaratory and injunctive relief against Defendants. Subsequently, First Cellular of Southern Illinois and Nextel West Corp. were

given leave to join the suit as plaintiff-intervenors. T-Mobile seeks declaratory and injunctive relief against the Defendant telephone companies regarding tariffs recently filed by the Defendant telephone companies (Count I) and declaratory and injunctive relief against the Illinois Commerce Commission ("ICC") commissioners regarding the same tariffs (Count II). The Plaintiff-Intervenors seek the same relief in their suits. Presently before the Court are: (1) the ICC Commissioners' Motion to Dismiss, (2) the Defendant telephone companies' Motion to Dismiss, (3) T-Mobile's Motion for Preliminary and Permanent Injunction, (3) First Cellular's Motion for Preliminary and Permanent Injunction, and (5) Nextel's Motion for Preliminary and Permanent Injunction.

## BACKGROUND

Plaintiffs are telecommunication carriers that provide telecommunication services in Illinois. Plaintiffs operate pursuant to radio licenses issued by the Federal Communications Commission, which authorizes Plaintiffs to provide commercial radio services ("CMRS") in the areas specified by their licenses. The Defendant telephone companies ("ILEC Defendants") are incumbent local exchange companies ("ILECs") authorized by the ICC to provide landline local exchange telephone services in various parts of Illinois.

In providing CMRS, Plaintiffs allow their customers to originate calls to customers of the ILEC Defendants, and customers of the ILEC Defendants may call Plaintiffs' customers. Plaintiffs and ILEC Defendants interconnect indirectly. Plaintiffs and ILEC Defendants each connect to the network of a larger ILEC, generally Illinois Bell Telephone Company d/b/a SBC Illinois. SBC Illinois operates tandem switches that deliver calls to and from the networks of Plaintiffs and the ILEC Defendants.

Historically, Plaintiffs and the ILEC Defendants have operated without formal agreements governing compensation paid by a carrier for terminating (delivering) calls originated by customers of the other. Rather, carriers operated under an arrangement in which neither of two carriers billed each other but could recover its costs of termination from its customers.

By August 11, 2004, all of the ILEC Defendants filed a tariff with the ICC, pursuant to 220 ILCS § 5/13-504, which purports to be effective September 4, 2004. The tariffs impose certain rates per minute of use on calls that originate and terminate within the ILEC Defendants' major trading area. None of the tariffs obligate the issuing ILEC Defendant to pay reciprocal compensation for calls originated on its network and terminated by Plaintiffs. None of the tariffs contain, or were filed with, documentation showing how the proposed rates were calculated. In addition to establishing rates for mobile-to-land calls, the tariffs impose on Plaintiffs an obligation to provide billing and call records, or to provide traffic reports based on traffic studies. The tariffs purport to authorize the ILEC Defendants to "discontinue the provision of the services" if Plaintiffs do not comply with each and every term of the tariff.[1]

Plaintiffs claim that the tariffs filed by the ILEC Defendants are unlawful and null and void as contrary to federal law and that federal law preempts the ICC from enforcing the tariffs.

## ANALYSIS

The ICC and ILEC Defendants first argue that Plaintiffs' claims are not ripe for judicial review.

---

[1] In December 2003, thirteen ILEC Defendants filed tariffs pursuant to 220 ILCS 5/1-101 *et seq.* In January 2004, Plaintiffs challenged the tariffs with the ICC, on grounds of improper notice and preemption by the 1996 Act. The ICC dismissed the tariffs on the first ground with leave to refile. The ICC did not reach the merits on the preemption issue.

The existence of a case or controversy is a prerequisite of federal judicial power under Article III. *See Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1002 (7th Cir. 2004) (*Sprint*). An element of the case or controversy requirement is the ripeness doctrine, which determines when a party may address its grievance in court. Essentially, ripeness is a question of timing. *See Sprint*, 361 F.3d at 1002. The ripeness doctrine's rationale "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administration policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967). A claim is not ripe for adjudication if it is based upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 581 (1985) (*Thomas*).

In order to address all parties' arguments, a review of the applicable statutes is appropriate. The Telecommunications Act of 1996 primarily seeks to promote competition in the previously monopolized local telephone service market. *See Verizon Communications Inc. v. FCC*, 535 U.S. 467, 474-75 (2002) (*Verizon Communications*). The 1996 Act imposes various obligations on ILECs, including allowing new market entrants to interconnect with and access the incumbent's network for a fair price. *See* 47 U.S.C. § 251(c); *Verizon Communications*, 535 U.S. at 491. The 1996 Act imposes a duty on local exchange carriers to establish reciprocal compensation arrangements for the transport and termination of telecommunications. 47 U.S.C. § 251(b)(5). The ILECs and the telecommunication carrier have a duty to negotiate in good faith in accordance with Section 252. 47 U.S.C. § 251(c)(1).

Section 252 provides that upon the receipt of a request for interconnection, services or network elements pursuant to Section 251, an ILEC may negotiate and enter into a binding agreement with the requesting telecommunication carrier without regard to certain standards set forth in subsections (b) and (c) of Section 251. The agreement must include a detailed schedule of itemized charges for interconnection and each service or network element included in the agreement. The agreement must then be submitted to the state commission for approval. 47 U.S.C. § 252(a)(1). The state commission either approves or rejects the agreement, with written findings as to any deficiencies. 47 U.S.C. § 251(e)(1).

During the negotiating of an agreement, any negotiating party may ask the state commission to participate in the negotiation and to mediate any differences arising in the course of the negotiation. 47 U.S.C. § 252 (a)(2). From the 135th to the 160th day after the date on which an ILEC receives a request for negotiation, the carrier or any other party to the negotiation may also petition the state commission to arbitrate any issues. 47 U.S.C. § 252(b)(1). If a state commission fails to act in accordance with Section 252, the FCC can act to resolve any issues. 47 U.S.C. § 252(e)(5). If either or both parties to an agreement disagree with the state commission's determinations under the 1996 Act, they may seek review of the state commission's determinations in federal district court. 47 U.S.C. § 252(e)(6).

With the enactment of the 1996 Telecommunications Act, Congress created a comprehensive federal scheme of telecommunication regulations to be administered by the FCC in what was primarily a state system of regulation of local telephone services. *See Indiana Bell Telephone Co. v. Indiana Utility Regulatory Commission*, 359 F.3d 493, 494 (7th Cir. 2004) (*Indiana Bell*).

However, a state commission's regulations concerning interconnection are not preempted by the 1996 Act "if such regulations are not inconsistent with the provisions of [the Act]." 47 U.S.C. § 261(b); *Wisconsin Bell, Inc. v. Bie*, 340 F.3d 441, 443 (7th Cir. 2003) (*Wisconsin Bell*).

The Illinois Public Utilities Act provides that proposed changes in rates, charges, classifications or tariffs are permitted upon the filing of the proposed tariff and thirty days' notice to the Commission and all potentially affected customers. The tariff becomes effective thirty days after such notice. 220 ILCS 5/13-504(a). The ICC investigates whether the proposed change is just and reasonable if a telecommunications carrier that is a customer of the ILEC files a complaint requesting an investigation of the proposed changes. 220 ILCS 5/13-504(a). If a complaint is filed, the ICC has the power and duty, after notice and hearing, to establish rates, charges, classifications or tariffs it finds to be just and reasonable. 220 ILCS 5/13-504(a).

None of the ILEC Defendants have sought enforcement of the proposed tariffs by the ICC. Nor have any of the Plaintiffs herein filed a complaint with the ICC challenging the tariffs. The ICC has taken no action regarding the tariffs which are the subject of this suit. The parties might seek to enforce or challenge enforcement or negotiate an agreement regarding the tariffs. As yet, that has not occurred; and more importantly, the ICC has not determined if the tariffs, or negotiated agreements in lieu thereof, are fair and reasonable.[2] Accordingly, the claims as to the ICC

---

[2]The Plaintiffs and the ILEC Defendants have a duty to negotiate an agreement in good faith, 47 U.S.C. § 251(c)(1); and the 1996 Act lacks language indicating that only the telecommunication carrier seeking interconnection services may request such negotiations, 47 U.S.C. § 251. Accordingly, the ILEC Defendants are not prohibited from seeking negotiations or implementing the provisions in Section 252 in such negotiations.

6

Defendants are not ripe for adjudication. *See Thomas*, 473 U.S. at 581; *Cf. Wisconsin Bell, Inc. v. Bridge*, 334 F. Supp. 2d 1127, 1132-33 (W.D. Wis. 2004) (*Bridge*) (controversy ripe for adjudication because commission had set rates in its order).

Furthermore, the Plaintiffs have failed to exhaust their administrative remedies.

"Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993); *see also Booth v. AT & T*, 253 F.2d 57, 59 (7th Cir. 1958) (affirming dismissal of suit involving claims of unreasonable and excessive rates because plaintiff had an administrative remedy before the FCC); *cf. Bridge*, 334 F. Supp. 2d at 1138 (due process claim not barred for failure to exhaust administrative remedies because party cannot pursue claim in the state forum); *MCI Telecommunications Corp. v. Illinois Bell Tele. Co.*, 1999 WL 1893197 (N.D. Ill. June 22, 1999) (parties exhausted administrative remedies in claim that ICC recommendation was incorrect).

In the instant case, Plaintiffs allege that ILEC Defendants' tariffs are preempted by the 1996 Act and that the ILEC Defendants, by filing the tariffs, violated the Act. The ICC is empowered to address the Plaintiffs' challenges to the tariffs, including whether the tariffs are preempted and/or violate the 1996 Act. *See* 220 ILCS 5/9-250 (in determining if rate is unjust, the ICC is empowered to determine whether the rate (tariff) is "in any way in violation of any provisions of law"). Also, as stated above, once the ICC issues a final order as to the tariffs, if need be, the parties are not prohibited from contesting the ICC's final order, including whether such order violates the 1996 Act, in federal court. *See Verizon Md. Inc. v. Public Serv. Commission of Md.*, 535 U.S. 635, 643-44 (2002).

Plaintiffs rely on the Seventh Circuit opinion in *Wisconsin Bell*, which is factually distinct from the case before the Court. There, the Wisconsin Public Service Commission ordered Wisconsin Bell to file tariffs rather than arbitrate a disagreement between WorldCom and its competitors concerning the terms whereby competitors could interconnect with Wisconsin Bell's local network. *Wisconsin Bell*, 340 F.3d at 442. The Wisconsin Public Service Commission's order was the basis of an action filed in the federal court, which heard the issue of whether the ruling by the state agency violated the 1996 Act. To the contrary here, no remedy has been pursued by the parties before the ICC. *See also, Bridge*, 334 F.Supp. at 1132, 1138 (claim was ripe contesting rates set by commission because the commission had set such rates – however, claim addressing the amount of discount a party was entitled to receive was not ripe for review because the commission had not yet ruled whether the discount was acceptable).

Based on the above, the Defendants' motions to dismiss are granted. Plaintiffs' motion for preliminary and permanent injunctive relief are moot.

## CONCLUSION

For the reasons stated above, the ICC Commissioners' Motion to Dismiss and the Defendant telephone companies' Motion to Dismiss are granted. T-Mobile's Motion for Preliminary and Permanent Injunction, First Cellular's Motion for Preliminary and Permanent Injunction, and Nextel's Motion for Preliminary and Permanent Injunction are denied as moot.

Dated: February 10, 2005

JOHN W. DARRAH
United States District Judge